UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANA BOWLING, on behalf of herself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | |
| Defendant. | |

Plaintiff Dana Bowling, individually and on behalf of all others similarly situated, brings this action and alleges the following:

## INTRODUCTION

1.      Microsoft's online browser extension, Microsoft Edge Shopping, purports to apply discount codes for online shoppers, but by design, deprives Content Creators and other marketers of commissions in connection with online product sales by swapping online tracking information and substituting Microsoft's own affiliate links during online checkout.

2.      "Content Creators" like Plaintiff develop, create, edit, and post digital media on platforms like YouTube, Instagram, TikTok, podcasts, and on self-hosted platforms like blogs.

3.      To monetize their online efforts, Content Creators work with online retailers through affiliate marketing programs, in which Content Creators enter into agreements with online retailers

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to promote products and services to their audiences in exchange for a commission on a percentage of the products sold.

4.      Online retailers track sales from their affiliate marketing programs using custom links, referred to as affiliate links, that are specific to each Content Creator. In addition, browser cookies and tracking tags link when online shoppers purchase a product through a Content Creator's link.

5.      Prior to completing a purchase, the affiliate marketing cookie and trackers auto-populate and credit the Content Creator for driving the sale, in a process known as "last click attribution." Last click attribution thus determines the commissions owed to Content Creators, a process with which the Microsoft browser extension interferes.

6.      Microsoft's browser, Edge, is the only web browser offered by Microsoft, and is pre-installed and set as the default web browser on every Windows Personal Computer.

7.      The Edge browser is pre-loaded with Microsoft's Edge Shopping extension (hereinafter, the "Microsoft Edge Shopping"), and as of 2017 was actively used on over 330 million devices.[1]

8.      Online shoppers use Microsoft Edge Shopping because it offers a rewards program, price comparison, and automatic discount codes. However, to the detriment of Content Creators, when consumers utilize Microsoft Edge Shopping at the point of purchase, at the last minute Microsoft replaces a Content Creator's last click attribution with its own, depriving Plaintiff and Class members of the monetary compensation to which they are entitled.

9.      Plaintiff now brings this class action suit on behalf of herself and a class of similarly situated Content Creators whose commissions were misappropriated by Microsoft Edge Shopping, in order to enjoin this unlawful conduct and recover for the injuries and damages Content Creators

---

[1] @MSEdgeDev, X.COM (Sept. 13, 2017), https://x.com/MSEdgeDev/status/907999855640903684.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

suffered as a result thereof.

## JURISDICTION

10.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Microsoft, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

11.    This Court has personal jurisdiction over Microsoft because it is headquartered in Seattle Washington, has a principal place of business in Washington, directly or through agents, and has sufficient minimum contacts with Washington such that it has intentionally availed itself of the laws of the United States and Washington.

12.    Venue is proper under 28 U.S.C. § 1391(a) through (d), because a substantial number of the events or omissions giving rise to the claims arose in this District, where Microsoft is headquartered and conducts business, including decisions made by Microsoft's governance and management personnel.

## PARTIES

13.    Plaintiff Dana Bowling is a Content Creator and a resident of Sherman Oaks, California.

14.    Defendant Microsoft Corporation. ("Microsoft") is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond, in King County.

## FACTS

### A.  The Online Marketing Ecosystem

15.    Content Creators create written, animated, visual, and audio material across social media platforms, and on their own websites and blogs.

16.    Online retailers utilize social media marketing to advertise their products, including by partnering with Content Creators to leverage Content Creators' social media audiences to

CLASS ACTION COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

influence consumers and more cost-effectively market their products and services.

17.    In 2024, the estimated amount spent on affiliate marketing was $10.72 billion dollars.[2] Affiliate marketing programs have made millionaires of social media stars whose content drives their loyal audiences to retailers' websites.[3]

18.    Content Creators generate revenue from producing social media content and partnering with online retailers for affiliate marketing, through which they earn commissions when members of their audience purchase products through the program.

19.    Online retailers provide unique links, known as affiliate links, to Content Creators in order to track the sales driven by the Content Creators and calculate their commissions. These affiliate links include a tracking tag added to the URL code of the website, as well as a cookie saved to the browser.[4]

**B.  Microsoft Edge Shopping**

20.    Microsoft launched its Edge browser in 2015, and is the third most used internet browser in the United States.

21.    Microsoft launched the Microsoft Edge Shopping extension in 2020, which is used by millions of shoppers daily.[5]

---

[2] Statista, "Affiliate marketing spending in the United States from 2023 to 2028," https://www.statista.com/statistics/693438/affiliate-marketing-spending/ (last visited Jan. 22, 2025).

[3] Outgrow, "Top 9 Affiliate Marketers You Need to Know,' https://outgrow.co/blog/affiliate-marketers (last visited Jan. 18, 2025).

[4] Cookies are small blocks of data created by a web server while a user is browsing a website and placed on the user's computer or other device by the user's web browser. Cookies are placed on the device used to access a website, and more than one cookie may be placed on a user's device during a session. Cookies can be used, in pertinent part, to enable web servers to store stateful information (such as items added in the shopping cart in an online store) on the user's device or to track the user's browsing activity (including clicking particular buttons, logging in, or recording which pages were visited in the past).

[5] Federic Landinois, "Microsoft brings new shopping tools to its Edge Browser," Techcrunch (Nov. 19, 2020), https://techcrunch.com/2020/11/19/microsoft-brings-new-shopping-tools-to-its-edge-browser.

CLASS ACTION COMPLAINT - 4

22.     Microsoft has expanded the Microsoft Edge Shopping browser extension to a standalone product that can be added to competing internet browsers, such as Google Chrome or Safari. Microsoft Edge Shopping can be used on desktop and laptop computers, and on mobile devices by downloading the Microsoft Edge browser application or the Bing Search application.

23.     Microsoft has integrated the Microsoft Edge Shopping software into Microsoft's Bing search engine so that individuals using the Firefox or Safari website browsers, which are themselves incompatible with the Microsoft Edge Shopping, are able to use Microsoft Edge Shopping's features.

24.     Because it is pre-installed on the default browser of all Windows Personal Computers, individuals who otherwise would not install a coupon extension have Microsoft Edge Shopping available and active on their device. Users must actively choose another browser, or avoid Microsoft's Bing Search engine in order to avoid Microsoft Edge Shopping.

25.     Microsoft advertises Microsoft Edge Shopping by claim that it has resulted in $4 billion dollars in savings provided to consumers just during 2023.[6]

26.     Microsoft Edge Shopping entices consumers to "save money with built in browser features," which are: (1) that the extension will track prices across time; (2) that it will identify the online retailer selling an item at the cheapest price, (3) that it will automatically apply discounts at checkout; and (4) provide rewards through Microsoft's rewards program.

27.     To identify cheaper prices or discount counts, Microsoft Edge Shopping advertises its ability to scrape webpages to identify and test for coupon codes.

28.     Microsoft uses Microsoft Edge Shopping to manipulate online shoppers' website traffic and network traffic transmissions, namely by altering the tracking tags that are transmitted

---

[6] Roger Capriotti, "Microsoft Edge: Looking back at an unforgettable 2023," WINDOWS BLOGS, (Dec. 28, 2023) https://blogs.windows.com/msedgedev/2023/12/28/microsoft-edge-looking-back-at-an-unforgettable-2023.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

during the checkout process. Microsoft Edge Shopping displaces tracking tags that point to Content Creators as the source of the referral, substitutes Microsoft's own tracking tags, and holds Microsoft out as the referrer of the specific products and/or services, thereby allowing Microsoft to claim credit for the sale when touting its online marketing capabilities and advertising network.

29.    This allows Microsoft to surreptitiously take credit for sales it did not drive, and which emanated from Content Creator's unique marketing affiliate links.

30.    While URLs are visible to consumers, network traffic is not. One investigation into the network traffic generated by Microsoft Edge Shopping indicates that it also displaces the cookies and trackers that originates anywhere besides the browser. It is in this way that Microsoft Edge Shopping displaces an affiliate link that originally drove traffic to a website and replaces it with Microsoft's own.



*Fig 1.* A screenshot of an item selected using an affiliate marketing link, with the cookies specific to that affiliate visible on the browser.

31.    Microsoft Edge Shopping affixes its own URL and installs its cookies and trackers on an online shopper's device at multiple steps of the checkout process if consumers click Microsoft Edge Shopping's pop-up buttons to search for coupons, or apply those coupons.

CLASS ACTION COMPLAINT - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**Coupons found!** ⊙

**Apply Coupons**

◇ 17 coupons available ⊙

*Fig 2:* Screenshot of a pop up button by Microsoft Edge Shopping identifying potential coupons.



*Fig 3.* The same item from Figure 1 showing the affiliate's cookies have been replaced by Microsoft's own.

32.    If the online shopper clicks the "Try all coupons" button, Microsoft Edge Shopping discreetly opens a new tab that acts as a simulated referral click, which removes the content creator's affiliate cookie and replaces it with Microsoft's own affiliate marketing cookie.

33.    Even if none of the of the displayed coupons result in a discount, Microsoft Edge Shopping still removes the Content Creator's affiliate marketing cookies. As a result, the Content Creator will not receive credit for the referral or commission they rightfully earned for this sale.

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



*Fig. 4:* Screenshot of coupon options identified by Microsoft Edge Shopping.



*Fig. 5:* Screenshot of the unsuccessful application of coupon options from Figure 4, still resulting in the installation of Microsoft's cookies.

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

34.     Thus, as a result of clicking the pop up buttons, Microsoft is able to seamlessly and invisibly insert its own affiliate marketing cookies, thereby stealing credit for the sale, even if Microsoft Edge Shopping is unable to identify *any* eligible coupons.

35.     In addition, Microsoft offers a cash back program, Microsoft Cashback, which rewards online shoppers with a refund of a percentage of their purchase if they sign up with a Microsoft account when using the Microsoft Edge Shopping extension. Like the Microsoft Edge Shopping Extension, when clicked, Microsoft Cashback affixes its marketing cookies, displacing any other affiliate cookies or tracking tags.



*Fig. 6:* Screenshot of a pop up button for Microsoft's Cashback program.

36.     According to Microsoft, there is no uniform distribution in the cash back offers it provides, as "[n]ot all customers will see Cash back promotions, and not all customers will see Cash back promotions for all ads in eligible campaigns."[7]

37.     Microsoft Cashback is "fully owned and operated by Microsoft," Microsoft alone determines which consumers are eligible for, and receive offers of cash back through its program as

---

[7]     Microsoft Advertising, "About automatic Cash back promotions," MICROSOFT, https://help.ads.microsoft.com/#apex/ads/en/60136/0 (last visited Jan. 29, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

"Microsoft Advertising determines the optimal cash back amount for any product per customer" based on its algorithm.[8]

### C. Microsoft Edge Shopping Displaces other Affiliate Links to Steal Commissions

38.    Only one affiliate link can be credited at the time of sale, which is determined by last click attribution.

39.    Ordinarily a cookie and tracker can remain on a browser for days or weeks, so that if an online shopper clicks an affiliate link and days pass before a purchase is completed, the Content Creator will still receive the commission for the sale.

40.    Microsoft Edge Shopping displaces the tracking tags generated by a Content Creator's affiliate link and replaces them with Microsoft's own link at the final check out step, so that it appears that Microsoft Edge Shopping drove the sale and not the Content Creator.

41.    The Microsoft Edge Shopping extension is purposely designed to exploit the last-click attribution process, and it achieves this by producing pop-ups during the checkout process in order to simulate referral clicks.

42.    By using any of Microsoft Edge Shopping's features, either by search of applying its coupons, or using Microsoft CashBack, Microsoft will displace the existing affiliate link with its own so long as a relevant action is taken as set forth above.

43.    Online shoppers are not notified when Microsoft replaces the information that ordinarily tracks a sale originating from a Content Creator's affiliate link with Microsoft's affiliate link and tracking cookies.

44.    By its design, including the multiple popup buttons at checkout, Microsoft Edge Shopping requires consumers to interact with it, thereby displacing all other affiliate links and trackers stored on a consumer's browser, so that Microsoft receives the last click attribution, and

---

[8] *Id.*

CLASS ACTION COMPLAINT - 10

therefore credit for the sale. In so doing, Microsoft robs Content Creators of the commissions they rightfully earned.

**D.    Plaintiff Dana Bowling**

45.    Dana Bowling is a former Hollywood casting director and began working as a brand strategist more than eight years ago. Two years ago Bowling launched a daily podcast on celebrity news and pop culture, Daily Dose of Dana. She has produced over 500 episodes of the podcast that is downloaded about 40,000 times each week, and Bowling has developed a website and social media accounts for the podcast.[9]

46.    Bowling also spent time to cultivate an online following across social media, and has amassed over 18,000 followers on YouTube, 75,000 followers on TikTok, 37,000 followers on Instagram, 14,000 followers on X (formerly Twitter), and 3,500 members of a private Facebook page for her followers.[10]

47.    To generate income, Plaintiff partners with online retailers to discuss products and services with her audience, earning commissions on sales generated through the affiliate link they provide. Specifically, Plaintiff has partnered with brands including LolaVie, BetterHelp, Dame, and OneSkin.

48.    Bowling relies on this commission income to support herself and her family.

49.    Bowling has developed partnerships with various retailers by featuring the products on her social media pages, discussing it with her followers, and providing her affiliate link through which consumers will receive a discount.

---

[9] Daily Dose of Dana https://podcasts.apple.com/us/podcast/daily-dose-of-dana/id1663554880, APPLE PODCASTS (last visited Jan. 22, 2025); Dana Bowling, https://www.danabowling.com/ (last visited Jan. 22, 2025).

[10] Daily Dose of Dana, https://www.youtube.com/channel/UCjNSFfVsEcba7gSU3FRHLqw, YOUTUBE (last visited Jan. 22, 2025); Daily Dose of Dana Podcast, https://www.tiktok.com/@thisisdanabowling, TIKTOK (last visited Jan. 22, 2025); This is Dana Bowling, https://www.instagram.com/thisisdanabowling, INSTAGRAM (last visited Jan 22, 2025); Dana Bowling, https://x.com/imdanabowling, X (last visited Jan. 22, 2025); Daily Dose of Dana https://www.facebook.com/groups/1053529642274540, Facebook (last visited Jan. 22, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

50.     When online shoppers use Bowling's affiliate link, her referral tag and cookies are installed on a user's device, allowing Bowling to be credited with the sale.

51.     But when an online shopper activates Microsoft Edge Shopping during the checkout process, Plaintiff's affiliate link and cookies are replaced with Microsoft's own.

52.     As a result of Microsoft Edge Shopping, Bowling has not received the commissions for the sales she drove, losing income and credit for sales she generated through her own efforts.

53.     Plaintiff continues to work on developing online content, engaging audiences, and facilitating partnerships for affiliate marketing. Plaintiff faces future harm from the continued and future misappropriation of her commission by Microsoft.

54.     In the absence of the Microsoft Edge Shopping Extension, Plaintiff and members of the class would have earned more commission money.

55.     Class members were and continue to be harmed by Microsoft as a result of this same misappropriation of commissions by Microsoft Edge Shopping.

## CLASS ALLEGATIONS

56.     Plaintiff, on behalf of herself and the class defined below under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seeks damages and injunctive relief on behalf of the members of the following Class and constituent Subclass (collectively, the "Class"):

**Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States online retailer and had commissions diverted to Microsoft as a result of the Microsoft Edge Shopping extension.

**California Subclass:** All persons in California who participated in an affiliate commission program with a United States online retailer and had commissions diverted to Microsoft as a result of the Microsoft Edge Shopping extension.

57.     Excluded from the Class are the Defendants and their officers, directors, management employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and

CLASS ACTION COMPLAINT - 12

their personnel, and all governmental entities.

58.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all Subclass members is likewise impracticable.

59.    **Typicality:** Plaintiff's claims are typical of the claims of the other class members. The factual and legal bases of Microsoft's liability are the same and resulted in same type of injury to Plaintiff and all other members of the Class.

60.    **Adequate representation:** Plaintiff will represent and protect the interests of the Class both fairly and adequately. She has retained counsel competent and experienced in complex class action litigation. Plaintiff has no interests that are antagonistic to those of the Class, and her interests do not conflict with the interests of the class members she seeks to represent.

61.    **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual class members because Microsoft has acted on grounds generally applicable to the Class and because class members share a common injury. Thus determining damages with respect to the Class as a whole is appropriate. Common facts and legal questions apply to the claims of Plaintiff and class members because the injuries incurred by Plaintiff and each member of the Class arose from the same conduct alleged herein.

62.    There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

     a.    Whether Microsoft programmed and designed the Microsoft Edge Shopping Extension in a manner that wrongfully credits Microsoft as the originator of

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

sales referrals;

b.    Whether the scheme described herein results in Microsoft being awarded credit for sales did not rightfully generate;

c.    Whether Microsoft was unjustly enriched to the detriment of Plaintiff and the Class in the form of commission payments;

d.    Whether Microsoft, through the actions alleged in this complaint, violated consumer protection laws in the state of California;

e.    Whether class members have been damaged by Microsoft's conduct;

f.    The nature and scope of appropriate injunctive relief.

63.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

64.    Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

a.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Microsoft;

b.    The prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the

CLASS ACTION COMPLAINT - 14

interests of other class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

c.   Microsoft has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

d.   The claims of class members consist of common issues whose resolution in a class trial would materially advance this litigation.

## STATUTE OF LIMITATIONS TOLLING

65.    All applicable statute(s) of limitations have been tolled by Microsoft's active and knowing concealment and denial of the facts alleged herein. Plaintiff and Class Members had no reasonable means of discovering that Microsoft was covertly replacing cookies and modifying network data to claim credit for sales it did not legitimately generate.

66.    Microsoft has an ongoing obligation to disclose to Plaintiff and Class Members of its practice of replacing affiliate marketing trackers that identify Content Creators as the source of referrals, substituting them with its own tracking tags to redirect commissions that rightfully belong to Content Creators such as Plaintiff and Class Members. Due to Microsoft's active concealment of this practice, any statutes of limitations that would typically apply to these allegations have been tolled and suspended.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF THE CLASS)

67.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

68.    Plaintiff lacks an adequate remedy at law.

69.    Plaintiff and class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were

CLASS ACTION COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

rightfully earned by Plaintiff and class members, not Microsoft. Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Edge Shopping Extension wrongfully claiming credit via last-click attribution.

70.     Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Edge Shopping Extension would cause the harm described herein.

71.     But for Microsoft's unjust and improper use of the Microsoft Edge Shopping Extension, it would not have been credited and awarded credit for sales that emanated from Plaintiff's and class members' respective affiliate marketing links.

72.     As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and class members.

73.     Microsoft continues to benefit and profit from the Microsoft Edge Shopping Extension while Plaintiff and class members continue to have their rightful commission payments diverted to Microsoft.

74.     Microsoft's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including by using the Microsoft Edge Shopping Extension to wrongfully credit itself with referrals and sales it did not rightfully earn.

75.     The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

76.     Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and class members.

### SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*
### (ON BEHALF OF THE CLASS)

77.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

78.     Plaintiff lacks an adequate remedy at law.

CLASS ACTION COMPLAINT - 16

79.     California's Unfair Competition Law (UCL) defines "unfair competition" to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§ 17200 et seq.

80.     Microsoft has engaged in acts and practices that are unlawful and unfair in violation of the UCL.

81.     Microsoft is a "person" as defined by Cal. Bus. & Prof. Code §17201.

82.     Microsoft's business acts and practices are unlawful because they interfere with the prospective economic advantage of Content Creators and constitute conversion, as set forth below. They also have unjustly enriched Microsoft for the reasons stated above.

83.     Microsoft committed unfair business practices by using the Microsoft Edge Shopping Extension to steal credit for sales referrals and thereby receive commission payments that rightfully belong to Plaintiff and the California Subclass.

84.     Microsoft's conduct is unfair in violation of the UCL because it violates California's public policy against interfering with another's prospective economic advantage.

85.     Microsoft wrongfully deprives Plaintiff and the Class of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

86.     The gravity of harm resulting from Microsoft's practice of appropriating commissions that belong to Content Creators like Plaintiff and the Class outweighs any potential utility therefrom.

87.     Microsoft's conduct set forth in this Complaint violates public policy and is unscrupulous, offensive, and substantially injurious.

88.     Microsoft actually and proximately caused harm to Plaintiff and the Class in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

89.     The conduct alleged herein is continuing and there is no indication that Microsoft will

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

cease such activity in the future.

90.    Microsoft's conduct in violation of the UCL has caused Plaintiff and the Class to be deprived of referral fees and commission payments for sales they rightfully originated. Plaintiff and the Class thus suffered lost money or property as a result of Microsoft's conduct.

91.    Plaintiff therefore seeks restitution, an injunction, and all other appropriate relief in equity, including reasonable attorneys' fees and costs of suit.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S BUSINESS AND PROFESSIONS CODE,
### CAL. BUS. & PROF. CODE § 17045, ET SEQ.
### (ON BEHALF OF THE CALIFORNIA SUBCLASS)

92.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

93.    Section 17045 prohibits the "secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extending to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition."

94.    By secretly and unlawfully displacing Plaintiff and other class members' affiliate marketing cookies with its own as part of Microsoft Edge Shopping's coupon generation and cashback rewards program, Microsoft ensured that it receive credit for sales by retailers, to the detriment of competition.

95.    This payment of secret commissions has directly harmed Plaintiff and other Class members, since the secret commissions themselves represent the diversion of Plaintiff and other Class members' earnings to Microsoft.

96.    Microsoft's conduct, including but not limited to the fact that it designed, planted, and programmed Microsoft Edge Shopping to steal commissions from Plaintiff and Class members, is a direct detriment to competitors engaged in affiliate marketing, is injurious to Microsoft's

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

competitors including Plaintiff and other Class members, "tends to destroy competition," and is unlawful.

### FOURTH CAUSE OF ACTION
### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (ON BEHALF OF THE CLASS)

97.   Plaintiff incorporates the above allegations by reference as if fully set forth herein.

98.   Plaintiff and class members are engaged in an economic relationship with online retailers by referring their audiences to those retailer's products through affiliate links. In return, online retailers provide Plaintiff and class members with commissions. This economic relationship is ongoing, and Plaintiff and class members expect to continue earning commissions in exchange for directing sales to online retailers.

99.   Microsoft is aware of the referral and commission relationship between Plaintiff and class members on the one hand and online retailers on the other hand.

100.   Through use of the Microsoft Edge Shopping Extension, Microsoft diverts commission payments from Plaintiff and class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an online retailer's product or service. Microsoft, via the Microsoft Edge Shopping Extension, displaces tracking tags that point to specific Content Creators as the source of the referral, and substitutes its own tracking tags, even though the sales in question emanated from a Content Creator's affiliate marketing link.

101.   Microsoft either intended to usurp commissions from Plaintiff and class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiff and class members.

102.   Microsoft's conduct harmed Plaintiff and class members because the Microsoft Edge Shopping Extension deprived them of monies they earned as the true originators of sales arising from their affiliate marketing links.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

103.    As a direct and proximate result of Microsoft's conduct described in this Complaint, Plaintiff and class members suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

104.    Microsoft is liable to Plaintiff and the Class for damages and costs permitted by law.

**FIFTH CAUSE OF ACTION**
**CONVERSION**
**(ON BEHALF OF THE CLASS)**

105.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

106.    Plaintiff and class members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by online retailers. The amount of each commission constituted a specific and identifiable sum.

107.    Microsoft intentionally and substantially interfered with Plaintiff's and class members' personal property by usurping commissions and referral fees owed to Plaintiff and class members.

108.    Microsoft, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiff and class members, without justification.

109.    Microsoft's wrongful exercise of control over Plaintiff's and class members' personal property constitutes conversion.

110.    Plaintiff and class members neither assented to nor ratified Microsoft's interference with their commissions.

111.    As a direct and proximate result of Microsoft's conversion, Plaintiff and class members were harmed.

112.    Microsoft is liable to Plaintiff and the Class for damages and costs permitted by law.

CLASS ACTION COMPLAINT - 20

**SIXTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE**
**(ON BEHALF OF THE CLASS)**

113.    Plaintiff incorporates the above allegations as if fully set forth herein.

114.    Plaintiff and the Class are engaged in contracts or ongoing business relationships with online retailers. Plaintiff and the Class drive customers to retailer's stores through affiliate links, and in return the online retailers provide the Class with commissions. These contracts and economic relationships are ongoing.

115.    Defendants knew that Plaintiff and the Class worked to drive customers to their retail partners' websites through affiliate links. Defendants knew that Plaintiff and the Class received their commissions based on associated unique affiliate cookies, and that the online retail partners' websites through affiliate links. Defendants knew that Plaintiff and the Class received their commissions based on associated unique affiliate cookies, and that the online retailors assessed the success of their affiliate program based on these cookies.

116.    Defendants intentionally disrupted Plaintiff and the Class's performance of the contractual and business obligations, or knew that their actions made performance more expensive, difficult, or impossible. Microsoft displaces these cookies that identify marketers as the source of the referral, stuffs their own cookies, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. Microsoft intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiff and Class members.

117.    Plaintiff and the Class were harmed by Microsoft's conduct because Microsoft Edge Shopping deprives them of commissions and referral fees they rightfully earned as the true drivers of the retailer sales.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

118.    As a direct and proximate result of Microsoft's conduct, Plaintiff and the Class suffered economic injury by being deprived of commissions they should have earned through their affiliate links.

119.    Microsoft is liable to Plaintiff and the Class for damages and costs permitted by law.

120.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

121.    Defendant is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and it conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2). Plaintiff and other members of the Class are "persons" within the meaning of RCW 19.86.010(1).

122.    Defendant is based in Washington and made the decision to design the Microsoft Edge Shopping extension is such a manner that it cheats these online marketers out of commissions they are entitled to by altering the checkout process and removing their tracking tags and affiliate marketing cookies.

123.    Defendant engaged in an unfair act that affects public policy by designing and maintaining its Microsoft Edge Shopping extension is such a manner that it cheats these online marketers out of commissions they are entitled to by altering the checkout process and removing their tracking tags and affiliate marketing cookies.

124.    Defendant's unfair acts have injured a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

125.    As a direct and proximate result of Defendant's unfair acts and practices, Plaintiff and Class members suffered injury in fact.

126.    As a result of Defendant's conduct, Plaintiff and members of the Class have suffered actual damages.

CLASS ACTION COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

127.    Plaintiff and Class members are entitled to an order enjoining the conduct complained of herein and ordering Defendant to take remedial measures to stop its conduct; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including reasonable attorneys' fees; and such further relief as the Court may deem proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class, including to prevent the Microsoft Edge Shopping Extension from taking credit for sales it did not originate;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and restitution to which Plaintiff and the Class are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and the Class pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and the Class any money and property acquired by Microsoft through its wrongful conduct;

H. Award Plaintiff and the Class reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## JURY DEMAND

2     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

3    issues so triable.

4

5     Dated:  January 31, 2025                      Respectfully submitted,

6                                                    **TOUSLEY BRAIN STEPHENS PLLC**

7                                                    By: */s/Jason T. Dennett*
                                                     Jason T. Dennett, WSBA #30686
8                                                    jdennett@tousley.com
                                                     By: */s/Joan M. Pradhan*
9                                                    Joan Pradhan, WSBA #58134
                                                     jpradhan@tousley.com
10                                                   1200 Fifth Avenue, Suite 1700
                                                     Seattle, Washington 98101
11                                                   Telephone: (206) 682-5600

12
                                                     Bryan L. Clobes (pro hac vice)
13                                                   Daniel O. Herrera (*pro hac vice* anticipated)
                                                     **CAFFERTY CLOBES MERIWETHER**
14                                                   **& SPRENGEL LLP**
                                                     135 South LaSalle Street, Suite 3210
15                                                   Chicago, IL 60603
                                                     Telephone: (312) 782-4880
16                                                   Email: blcobes@caffertyclobes.com
                                                             dherrera@caffertyclobes.com
17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT - 24